1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11   PROTECTIVE LIFE INSURANCE          No. 2:10-cv-02312-MCE-EFB
     COMPANY,

12
             Plaintiff,
13
         v.                             **MEMORANDUM AND ORDER**
14
     DONALD GERALD DAVIS; RICHARD
15   DOUGLAS RISON,

16           Defendants.

17

18                          ----oo0oo----

19

20       Plaintiff Protective Life Insurance Company ("Plaintiff")

21   initiated this interpleader action against Defendants Donald

22   Gerald Davis ("Davis") and Richard Douglas Rison ("Rison") on

23   August 27, 2010.  Presently before the Court is Rison's Motion

24   for Summary Judgment ("Motion").  For the following reasons,

25   Rison's Motion is DENIED.[1]

26   ─────────────────────

27       [1] Because oral argument will not be of material assistance,
     the Court ordered this matter submitted on the briefing.  E.D.
28   Cal. R. 230(g).

                                    1

1

## BACKGROUND

2

3        Davis and Rison both claim to be the beneficiary of a
4   $500,000 life insurance policy ("Policy") issued by Plaintiff to
5   Cynthia Davis ("Decedent"), who was Rison's mother and Davis's
6   wife.  Prior to the spring of 2010, Davis was listed as the
7   Policy beneficiary.  However, just a few weeks prior to
8   Decedent's death, on approximately April 27, 2010, a Service
9   Request Form was submitted to Plaintiff, changing the Policy
10  beneficiary to Rison.  Rison thus claims he should receive the
11  proceeds of Decedent's policy to the exclusion of anyone else.
12  Davis contends to the contrary that Decedent only changed the
13  beneficiary on her Policy from Davis to Rison on the condition
14  that Rison would return the proceeds to Decedent or Davis, or
15  give up his beneficiary status at some point in the future,
16  namely, after the Decedent and Davis filed for bankruptcy relief,
17  so that the Policy proceeds, among other assets, could
18  essentially be hidden from the bankruptcy estate.  Some
19  background facts are thus necessary to understand the parties'
20  current dispute.
21        According to Davis, in 2009, Davis and Decedent fell behind
22  on their mortgage.  Deposition of Donald Gerald Davis ("Davis
23  Dep."), 10:11-11:25.  In June of 2009, Decedent was diagnosed
24  with ovarian cancer.  Id., 20:12-14.  Davis was also later
25  diagnosed with colon cancer.  Id., 51:23-52:4.  Mounting medical
26  bills purportedly added to the couple's money troubles.  Id.,
27  57:25-58:12; Deposition of Richard Douglas Rison ("Rison Dep."),
28  29:9-17, 60:19-61:7, 68:22-70:13.

1  Decedent allegedly thereafter expressed concern about losing the
2  couple's home.  Davis Dep., 69:9-71:5.  Accordingly, as Davis
3  testified in his deposition, the couple hatched a plan to
4  transfer their assets to third parties who would return those
5  assets to the couple once any potential bankruptcy proceedings
6  were completed.  Davis Dep., 66:25-68:7.

7       Plaintiff was eventually hospitalized in the spring of 2010,
8  first from March 20 through April 20, and then from April 21
9  through April 27.  On March, 25, 2010, while in the hospital, the
10 above-mentioned Service Request Form was submitted to Plaintiff,
11 changing the beneficiary under the Policy to Rison.  According to
12 Rison, Decedent signed the beneficiary change form "knowingly,
13 voluntarily and with the requisite mental capacity."  Rison's
14 Separate Statement of Undisputed Material Facts ("Rison's
15 SSUMF"), Nos. 2, 4.

16      More specifically, Rison claims that during Decedent's March
17 hospital stay, she called her half-sister, Judy Stiedl
18 ("Stiedl"), and asked that she come visit.  Deposition of Judith
19 Stiedl ("Stiedl Dep."), 76:10-18. Stiedl, who lives in Alaska,
20 arrived shortly thereafter.  Id., 88:23-89:2.  Upon her arrival,
21 Decedent informed Stiedl that doctors had told her to "get her
22 affairs in order."  Id., 103:5-20.  Decedent then indicated she
23 had previously filled out forms to change her life insurance
24 beneficiary from Davis back to Rison.  Id., 103:23-104:7.  When
25 Decedent realized that she had never received a confirmation that
26 any such Policy changes were actually made, however, Decedent
27 determined it necessary to find out who was "on [her] life
28 insurance."  Id., 102:15-103:2.

1   Decedent thus asked Stiedl to call Rison and ask him to bring to

2   the hospital the "little metal box" in which Decedent's life

3   insurance information was contained.  Id., 108:12-22.  Rison did

4   as asked and, the following morning, Decedent asked Stiedl to

5   call Plaintiff to identify the beneficiary listed on the Policy.

6   Id., 108:22-25; 109:17-111:9.  After being informed Davis was the

7   beneficiary, Stiedl requested that Plaintiff fax a beneficiary

8   change form to Decedent.  Id., 111:7-11.

9        Upon receiving that form, which was the above-mentioned

10  Service Request Form, Decedent instructed Stiedl as to how it

11  should be completed.  Id., 100:3-102:14.  Decedent purportedly

12  signed the form changing her beneficiary to Rison and dictated a

13  cover letter to be included.  Id., 113:19-114:4.  The Service

14  Request Form was faxed back to Plaintiff on March 25, after which

15  Decedent received a confirmation from Plaintiff that her

16  beneficiary had in fact been updated.  Id., 113:22-24;

17  Declaration of Stephen T. Doge ("Hodge Decl."), ¶ 4, Exh. C.

18       According to the deposition testimony of Rison and Stiedl,

19  Decedent was alert, clear and coherent during this time.  Rison

20  Dep., 95:10-11, 109:22-110:5; Stiedl Dep., 154:13-25.  Hospital

21  records further indicate Plaintiff was awake, alert and oriented.

22  Hodge Decl., ¶ 5, Exh. D.  In addition, friends who visited

23  Decedent also found her to be mentally clear, alert and coherent.

24  Declaration of Cindy Castle, ¶ 5; Declaration of Ricky M.

25  Grimshaw, ¶ 4; Declaration of William Douglas Rison, ¶ 4.

26       Davis, however, paints a different picture of Decedent's

27  mental and physical state at the time the beneficiary change form

28  was submitted.

4

According to Davis, Decedent's "reactions were slow and the ability to understand things said to her were slowed and affected." Davis's Response to Rison's SSUMF, No. 4 (citing Davis Dep., 24:14-19; 25:1-20; 35:18-36:11; 88:23-89:6; 89:19-90:11; 96:18-97:22; 100:1-15). In addition, Davis "observed problems with [Decedent's] memory and understanding and responding to questions with confusion and conversation problems." Id. Davis also witnessed what he believed to be Decedent's "periods of incoherency and shouting out odd comments on occasions." Id.

Davis likewise has his own take on the events underlying Decedent's decision to change her Policy beneficiary. According to Davis, he only discovered Decedent had changed her beneficiary when he opened the confirmation received from Plaintiff in the mail. Rison Dep., 124:12-18; Stiedl Dep., 117:15-17; Davis Dep., 79:17-81:6. Davis eventually asked Decedent why she made the change to her Policy, and she responded that she still intended to file bankruptcy and thus intended to put the assets, including the Policy, into Rison's name for a temporary period to end upon the completion of any bankruptcy proceedings. Davis Dep., 79:17-81:6.

Davis further contends that, both before and after Decedent's death, he and Rison engaged in several discussions with respect to the Policy and other assets. For example, Davis recalls a conversation in which Davis indicated he believed Rison was designated as the Policy beneficiary only to protect any proceeds from being included in the bankruptcy estate. Davis Dep., 81:20-82:14. Rison purportedly said nothing, shook his

1  head from side to side, and walked away.  Id.  In addition, in

2  another conversation, Rison purportedly indicated that "if

3  [Davis] want[ed] any of his money, he need[ed] to just be quiet."

4  Rison Dep., 140:19-143:12.

5      Given the above record, Protective was unable to determine

6  whether the Policy proceeds are payable to Davis or Rison.

7  Plaintiff thus deposited those benefits with the Court and filed

8  its Complaint in Interpleader asking the Court to resolve the

9  parties' dispute.  Plaintiff has since been discharged from this

10 action.  On February 23, 2012, Rison moved for summary judgment,

11 arguing Davis cannot prove Decedent changed her beneficiary as

12 the result of any fraud or undue influence or attributable to

13 Decedent's lack of mental capacity.  Given the factual disputes

14 presently before the Court, Rison's Motion is DENIED.[2]

15 ///

16 ///

17 ///

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25

26     [2] Both parties filed objections to the other party's
evidence.  To the extent Rison objects to Davis's evidence as
27 irrelevant, his objections are overruled.  The remaining
objections are overruled as moot because the evidence objected to
28 was not necessary to resolution of the instant Motion.

1

2

## STANDARD

3      The Federal Rules of Civil Procedure provide for summary

4 judgment when "materials in the record, including depositions,

5 documents, electronically stored information, affidavits or

6 declarations, stipulations..., admissions interrogatory answers,

7 or other materials" "show[] that there is no genuine dispute as

8 to any material fact and the movant is entitled to judgment as a

9 matter of law." Fed. R. Civ. P. 56(a), (c). One of the

10 principal purposes of Rule 56 is to dispose of factually

11 unsupported claims or defenses. Celotex Corp. v. Catrett,

12 477 U.S. 317, 323-324 (1986).

13      Rule 56 also allows a court to grant summary adjudication on

14 part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party

15 may move for summary judgment, identifying each claim or defense-

16 or the part of each claim or defense-on which summary judgment is

17 sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374,

18 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter

19 Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

20      The standard that applies to a motion for summary

21 adjudication is the same as that which applies to a motion for

22 summary judgment. See Fed. R. Civ. P. 56(a), (c); Mora v.

23 ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

24           [A] party seeking summary judgment always bears the
             initial responsibility of informing the district court
25           of the basis for its motion, and identifying those
             portions of "the pleadings, depositions, answers to
26           interrogatories, and admissions on file together with
             the affidavits, if any," which it believes demonstrate
27           the absence of a genuine issue of material fact.

28 Celotex, 477 U.S. at 323 (quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251 (quoting Schuylkill and Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c)), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ....

1  Where the record taken as a whole could not lead a rational trier

2  of fact to find for the nonmoving party, there is no 'genuine

3  issue for trial.'" <u>Matsushita</u>, 475 U.S. at 586-87.

4      In resolving a summary judgment motion, the evidence of the

5  opposing party is to be believed, and all reasonable inferences

6  that may be drawn from the facts placed before the court must be

7  drawn in favor of the opposing party. <u>Anderson</u>, 477 U.S. at 255.

8  Nevertheless, inferences are not drawn out of the air, and it is

9  the opposing party's obligation to produce a factual predicate

10  from which the inference may be drawn. <u>Richards v. Nielsen</u>

11  <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

12  <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

13

14                              **ANALYSIS**

15

16      Rison moves for summary judgment on the grounds that he is

17  the person named as beneficiary on the Policy, and Davis is

18  unable to show any fraud, lack of capacity or undue influence

19  affected Decedent's decision to change the beneficiary from Davis

20  to Rison.  Rison believes Decedent acted of her own free will in

21  making the above Policy change.  Moreover, Rison argues there is

22  no evidence in the record to indicate Decedent lacked her

23  decision-making faculties or that Rison acted in any way to

24  influence his mother's decision.  In fact, according to Rison,

25  "his only 'involvement' in th[e] process was to bring the 'little

26  metal box' containing his mother's insurance information to her

27  at the hospital - which was pursuant to his mother's request."

28  Motion, 8:24-26.

1   Davis disputes Rison's characterization of the above events

2   and argues that the issue of capacity is not relevant to whether

3   Decedent was fraudulently induced or unduly influenced to change

4   the beneficiary on her Policy.  To the contrary, Davis believes

5   that the real issue in this case is why Decedent changed her

6   Policy beneficiary in the first place.  According to Davis,

7   Decedent made the change as part of the couple's plan to protect

8   their assets from being included in their anticipated bankruptcy

9   estate.  Pursuant to this theory, Davis believes Rison is holding

10  several assets, including the Policy proceeds if released to him,

11  in a constructive or resulting trust for Davis.  Davis seems to

12  be arguing, therefore, that Rison deceived or defrauded Decedent

13  into believing that if she transferred her assets to Rison, Rison

14  would hold them for Davis and give those assets back at an

15  appropriate time.  Rison and Seidel both purportedly exercised

16  undue influence over Decedent to convince her to proceed with

17  those transfers.  Finally, Davis indicates that Decedent may have

18  been all the more susceptible to the efforts of Rison and Stiedl

19  given her weakened mental state at the time.

20   As is clear from the Court's above recitation of the facts,

21  the parties hotly contest the reasons underlying Decedent's

22  decision to change her beneficiary from Davis to Rison.  Rison

23  incorrectly attempts to cast a number of Davis's facts, namely

24  those pertaining to the financial woes of Davis and Decedent and

25  their plans to avoid including Decedent's assets in a future

26  bankruptcy estate, as irrelevant, which they are not.  Moreover,

27  Rison himself admits those facts are disputed.

28  ///

See, e.g., Rison's Response to Davis's SSUMF, No. 4 ("Defendant Rison disputes that Cynthia Davis changed the beneficiary on the Policy to her son as part of a plan for the Davis's to file bankruptcy, and then have everything returned to them after the bankruptcy was completed."). The disputed facts going to those issues, which will ultimately turn on witness credibility, are not only material, they could prove to be dispositive. Accordingly, summary judgment in this case is entirely inappropriate. Rison's Motion is DENIED.

**CONCLUSION**

For the reasons just stated, Rison's Motion for Summary Judgment (ECF No. 21), Rison's Objections to Evidence (ECF No. 33) and Davis's Objections to Evidence (ECF No. 25) are DENIED.

IT IS SO ORDERED.

Dated: July 6, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE