UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PROTECTIVE LIFE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>DONALD GERALD DAVIS, RICHARD DOUGLAS RISON,<br><br>        Defendants. | No. 2:10-cv-02312-MCE-EFB<br><br>FINAL PRETRIAL ORDER<br><br>TRIAL DATE: February 17, 2015<br>TIME: 9:00 a.m. |

    Pursuant to Court Order, a Final Pretrial Conference was held on June 27, 2014. Douglas Winter appeared as counsel for Defendant Donald Davis and Stephen Hodge appeared as counsel for Defendant Richard Rison. After hearing, the Court makes the following findings and orders:

I.    <u>JURISDICTION/VENUE</u>

    Jurisdiction is predicated upon 28 U.S.C. § 1332 and 1335. Jurisdiction and venue are not contested.

II.    <u>NON-JURY</u>

    A jury trial was not requested by any of the parties pursuant to Rule 38(b) of the Federal Rules of Civil Procedure. Accordingly, this matter will be tried by the Court.

///

III. UNDISPUTED FACTUAL ISSUES

1. Donald Gerald Davis (DOB: 03/30/1955) and Cynthia Davis (DOB: 08/30/1957) were married on December 22, 2005.

2. Cynthia Davis was formerly married to William Douglas Rison and one of their children is Defendant Richard Douglas Rison (DOB: 03/03/1984 - hereinafter "Doug Rison").

3. Cynthia Davis has a half-sister named Judy Stiedl (DOB: 11/19/1961) who lives at 313 Rogers Road, Kenai, Alaska. Judy Stiedl is an Aunt of Doug Rison.

4. On January 26, 2006, Cynthia Davis completed a life insurance application with Chase Insurance Life Company, naming Donald Davis as the primary and only beneficiary. The life insurance policy issued, #ZL9928647, was effective February 15, 2006, replacing a Zurich Life Insurance Company policy (No. ZL6019205) effective November 15, 2000. The face amount of the policy in issue is $500,000.

5. On June 11, 2006, Cynthia Davis submitted a Service Request Form (hereinafter "SRF") to Chase, received June 20, 2006, listing Donald Davis as both co-owner and primary beneficiary of the policy, and listed Doug Rison as a contingent beneficiary along with Katherine LeeAnn Hollis, daughter of Donald Davis.

6. Correspondence from Rebecca Long of Chase Insurance, dated June 26, 2006, to Cynthia Davis stated the SRF dated June 11, 2006 could not be accepted/processed because the SRF had been altered. A new form and business reply envelope were provided with the letter.

7. On July 10, 2006 Chase Insurance received a SRF attempting to designate Douglas Rison as the primary and only beneficiary for the policy.

8. Correspondence from Peggy Hermanson of Chase, dated July 14, 2006, confirmed receipt of the SRF to change the beneficiary but could not process the SRF because it was not signed by the policy owner, Cynthia Davis. A business reply envelope was enclosed with the letter.

///

9. In February, 2009, Doug Rison moved from Idaho to the home of Cynthia and Donald Davis, at 19841 Scratch Ranch Road, Fiddletown, California.

10. In April 2009, Doug Rison began working at the Davis Ranch, of which Donald Davis is a part owner.

11. Cynthia Davis was diagnosed with ovarian cancer in June 2009 and received cancer treatment at Mercy San Juan Hospital in Sacramento, California on the following dates: June 16-17, 2009; June 23-30, 2009; July 2, 2009; October 1, 2009; March 7-9, 2010; March 20 - April 5, 2010; April 12, 2010; and April 21-27, 2010. Her treating oncologist was Dr. Ram Lalchandani.

12. On March 20, 2010, Cynthia Davis was hospitalized at Mercy San Juan Hospital with complaints associated with the ovarian cancer.

13. On March 24, 2010, Judy Stiedl arrived at Mercy San Juan Hospital from Alaska to help take care of her half-sister, Cynthia Davis. Ms. Stiedl stayed in California until after the funeral service for Cynthia Davis.

14. On March 25, 2010, a SRF was faxed by Protective Insurance (aka Chase) to Cynthia Davis at 4 Oncology at Mercy San Juan Hospital, filled out, and then faxed back to Protective Life Insurance. The return fax to Protective Insurance had three pages; a cover sheet and a two page SRF changing the primary beneficiary to Doug Rison.

15. Correspondence from Protective Life Insurance, dated March 25, 2010, was mailed to Cynthia Davis at the Fiddletown address to confirm the change in beneficiary from Donald Davis to Doug Rison.

16. Cynthia Davis died April 27, 2010.

IV. DISPUTED FACTUAL ISSUES

The remaining claims for trial are:

**Defendant Douglas Rison**

1. Whether Cynthia Davis had the requisite legal capacity to execute the March 25, 2010 SRF, changing the beneficiary on the policy to her son, Doug Rison?

3

2.	Whether Doug Rison exerted any undue influence upon his mother, Cynthia Davis, in order to have her change the beneficiary on the policy to himself?

3.	Whether Judy Stiedl exerted any undue influence upon her half sister, Cynthia Davis, in order to have her change the beneficiary on the policy to Doug Rison?

4.	Whether Doug Rison made any false statements or promises, or intentional misrepresentations, to induce Cynthia Davis to change the beneficiary on the policy to himself?

5.	Whether Judy Stiedl made any false statements or promises, or intentional misrepresentations, to induce Cynthia Davis to change the beneficiary on the policy to Doug Rison?

6.	Whether Doug Rison and Judy Stiedl had any agreement, plan or understanding to fraudulently obtain the Policy proceeds?

7.	Whether Doug Rison made any statement, agreement or representation to Defendant Davis that Rison would help to defraud Defendant Davis' creditors by agreeing to become the beneficiary of the Policy, hold the Policy proceeds for Defendant Davis until Davis could complete a bankruptcy proceeding, and then deliver the Policy proceeds to Defendant Davis?

8.	Whether Doug Rison had any conversations with Defendant Davis about the Policy, the beneficiary, or the proceeds before the SRF was submitted to Chase on March 25, 2010?

**Defendant Donald Gerald Davis**

1.	Judy Stiedl arrived at Mercy San Juan Hospital the morning of March 24, 2010, and, around 8:00 a.m. the morning of March 25, 2010, the SRF changing the beneficiary from Donald Davis to Doug Rison was faxed from Mercy San Juan Hospital, 4 oncology, to Protective Life Insurance.  Both Judy Stiedl and Doug Rison were present when Cynthia Davis and Judy Stiedl filled out the SRF and cover page that was faxed to Protective Life Insurance.  The return fax to Protective Insurance had three pages; page one was a cover sheet and pages two and three the SRF changing the

primary beneficiary to Doug Rison. Judy Stiedl filled out pages one and two, Cynthia Rison filled out page three. Judy Stiedl was to remain with Cynthia Davis on an almost 24/7 basis until April 5, 2010.

2.  Neither Judy Stiedl nor Doug Rison ever communicated to Donald Davis that the primary beneficiary had been changed to Doug Rison.

3.  Donald Davis discovered the change in beneficiary to Doug Rison days later when he opened the envelope from Protective Life Insurance, thinking it was a bill, but was confirmation of the change of beneficiary.

4.  Donald Davis paid for the 2006 Ford F150, VIN 1FTTW14566FA40629; the 2005 Ford Escape, VIN# 1FMYU93105KC70224; and the 2005 Flagstaff trailer, VIN# 4X4CFS7145T151598.

5.  Donald Davis placed Cynthia Davis on the title for the Ford F150 pickup truck and Flagstaff trailer because of his divorce, but did have both Donald Davis and Cynthia Davis on the title for the Ford Escape.

6.  On March 31, 2010, title to the Ford F150 and the Flagstaff trailer was signed by Cynthia Davis to Doug Rison while Cynthia was at Mercy San Juan Hospital with both Doug Rison and Judy Steidl present. On April 11, 2010, Cynthia Davis transferred title to the Ford Escape to Doug Rison with Judy Steidl and Doug Rison present. Doug Rison filed all three of the transfers with the Department of Motor Vehicles.

7.  The Department of Motor Vehicles issued new ownership registration to the Flagstaff trailer to Doug Rison on April 1, 2010; new ownership registration to the Ford Escape to Doug Rison on April 13, 2010; and new ownership registration to the Ford F150 to Doug Rison on April 23, 2010.

8.  Donald Davis was not told about the title transfers for the three vehicles to Doug Rison until after the death of Cynthia Davis.

9.  During the time period from March 24, 2010 up to April 5, 2010, Doug Rison would usually visit Cynthia Davis after work, trying to stay for two or three hours.

Donald Davis would also visit after work for a few hours, and was able to occasionally visit in the mornings.

10. After the death of Cynthia Davis, Judy Stiedl and Doug Rison sorted through Cynthia Davis' property at the home and did take some personal items for themselves. However, Donald Davis objected to some of the items that they appeared to be taking and this resulted in an argument about what could be taken and what could not. Doug Rison, with Judy Stiedl present, told Donald Davis that, "if he wants any of his money he needs to just be quiet".

11. Doug Rison gave the Ford F150 to Judy Stiedl, and the Ford Escape to Cindy Castle. Doug Rison sold the tent trailer in Alaska.

12. Did Cynthia Davis transfer the titles to the Ford F150, Ford Escape, and Flagstaff trailer, and also change the beneficiary of the life insurance policy to Doug Rison, as part of a plan to conceal assets while Cynthia Davis and Donald Davis filed bankruptcy in an attempt to discharge and reduce the medical debts they had incurred from cancer treatment for both of them, and also avoid the foreclosure on their home which was taking place at that time?

13. Did Doug Rison admit that he and Judy Stiedl wanted, and intended, to steal everything that Donald Davis owned?

14. Was Judy Stiedl angry with Donald Davis because she felt he was not treating Cynthia Davis as Judy Stiedl felt he should while Cynthia Davis was ill?

15. Did Cynthia Davis threaten divorce from Donald Davis as leverage to get him to do what she wanted him to do?

16. Did Cynthia Davis change the beneficiary from Donald Davis to Doug Rison, and transfer title to the three vehicles to Doug Rison for leverage to get Donald Davis to do what she wanted?

17. Did Doug Rison offer Donald Davis $125,000 to resolve the dispute involving the life insurance proceeds?

///

1     18.    Did Doug Rison agree to hold the possible life insurance proceeds and title to the three vehicles involved, while the bankruptcy claim was being litigated?

    19.    Did Doug Rison agree to hold the possible life insurance proceeds and title to the three vehicles as leverage to get Donald Davis to do what Cynthia Davis wanted?

    20.    Did Doug Rison and Judy Stiedl exercise or exert undue influence through their physical presence and family relationship to Cynthia davis when the SRF was signed on March 25, 2014, and the title transfers to the three vehicles on March 31, 2010 and April 11, 2010?

    21.    Donald Davis was diagnoses with colon cancer in the summer of 2009, and received two courses of chemotherapy in 2009/2010, with surgery in January, 2010. His treating oncologist is Dr. Ram Lalchandani.

    22.    Was Cynthia Davis suffering from Chemo Brain from the chemotherapy she had been receiving for her cancer?

    23.    Did Cynthia Davis, in light of her medical condition, understand the consequences and ramifications of her actions by changing the beneficiary to Doug Rison and transferring all of the Davis vehicles to Doug Rison?

    24.    Did the medications Cynthia Davis receive during the hospitalization from March 20, 2010 to April 5, 2010, affect her ability to understand and comprehend what was said to her, and what she said to others?

    25.    Did Cynthia Davis have memory problems from the chemotherapy she had been receiving, as well as the medication she was taking, while hospitalized from March 20, 2010 to April 5, 2010?

    26.    During the hospitalization from March 20, 2010 to April 5, 2010, did the doctors at Mercy San Juan Hospital tell Donald Davis that Cynthia Davis was not mentally able to make a decision in regards to surgery for her cancer?

    27.    During the hospitalization from March 20, 2010 to April 5, 2010, did Cynthia Davis make odd or incoherent statements, and sometimes shout out loud inappropriately?

28. Was Cynthia Davis in denial about the fact that she was dying, and did this affect her reasoning and understanding when she changed the beneficiary of the life insurance policy and transfer title to the three vehicles to Doug Rison?

29. Cynthia Davis received chemotherapy beginning after her June 2009 surgery and continuing up to April 2010.

All issues of fact remaining in dispute are subject to proof at the time of trial.

## V. WITNESSES

Defendant Donald Davis anticipates calling the witnesses listed on Attachment "A".

Defendant Richard Rison anticipates calling the witnesses listed on Attachment "B".

Each party may call a witness designated by the other.

A. No other witnesses will be permitted to testify unless:

(1) The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not be reasonably anticipated at the Final Pretrial Conference, or

(2) The witness was discovered after the Final Pretrial Conference and the proffering party makes the showing required in "B" below.

B. Upon the post-pretrial discovery of witnesses, the attorney shall promptly inform the Court and opposing parties of the existence of the unlisted witnesses so that the Court may consider at trial whether the witnesses shall be permitted to testify. The evidence will not be permitted unless:

(1) The witnesses could not reasonably have been discovered prior to pretrial;

(2) The Court and opposing counsel were promptly notified upon discovery of the witnesses;

(3) If time permitted, counsel proffered the witnesses for deposition;

///

(4)   If time did not permit, a reasonable summary of the witnesses' testimony was provided by opposing counsel.

## VI. EXHIBITS - SCHEDULES AND SUMMARIES

At present, Defendant Donald Davis contemplates by way of exhibits those listed on Attachment "C".

At present, Defendant Richard Rison contemplates by way of exhibits those listed on Attachment "D".

**Defendant Donald Davis' exhibits shall be listed numerically.   Defendant Richard Rison's exhibits shall be listed alphabetically.**  The parties shall use the standard exhibit stickers provided by the Court Clerk's Office.  After three letters, note the number of letters in parenthesis (i.e., "AAAA(4)" to reduce confusion during the trial. All multi-page exhibits shall be stapled or otherwise fastened together and each page within the exhibit shall be numbered.  All photographs shall be marked individually.  The list of exhibits shall not include excerpts of depositions which may be used to impeach witnesses.

Each party may use an exhibit designated by the other.  In the event the parties offer the same exhibit during trial, that exhibit shall be referred to by the designation the exhibit is <u>first</u> <u>identified</u>.  The Court cautions the parties to pay attention to this detail so that all concerned will not be confused by one exhibit being identified with both a number and a letter.

A.   No other exhibits will be permitted to be introduced unless:

(1)   The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence which could not be reasonably anticipated at the Pretrial Scheduling Conference, or

(2)   The exhibit was discovered after the Pretrial Scheduling Conference and the proffering party makes the showing required in paragraph "B", below.

B.   Upon the post-pretrial discovery of exhibits, the attorneys shall promptly inform the Court and opposing counsel of the existence of such exhibits so that the

Court may consider at trial their admissibility. The exhibits will not be received unless the proffering party demonstrates:

    (1)    The exhibits could not reasonably have been discovered prior to pretrial;

    (2)    The Court and counsel were promptly informed of their existence;

    (3)    Counsel forwarded a copy of the exhibit(s) (if physically possible) to opposing counsel. If the exhibit(s) may not be copied, the proffering counsel must show that he has made the exhibit(s) reasonably available for inspection by opposing counsel.

    C.    As to each exhibit, each party is ordered to exchange a copy identical to the Court's copy, or other reproduction of the exhibit(s) in a three-ring binder(s) by **February 3, 2015**. The attorney or representative for each party is directed to present the original and two (2) copies of the exhibit(s) and exhibit list to the Court Clerk's Office, no later than **3:00 p.m., February 3, 2015**, or at such earlier time as may be ordered by the Court. **NO EXCEPTIONS.**

    D.    **The Court shall be presented with a copy of the exhibit(s) in a 3-ring binder(s) with a side tab identifying each exhibit by number or letter. Each binder shall be no larger than three inches in width and have an identification label on the front and side panel.**

VII.    <u>DISCOVERY DOCUMENTS</u>

    A.    <u>Filing Depositions</u>. It is the duty of counsel to ensure that any deposition which is to be used at trial has been lodged with the Clerk of the Court. In addition, two unmarked copies of the transcripts must be delivered to the Court Clerk's Office. Counsel are cautioned that a failure to discharge this duty may result in the Court precluding use of the deposition or imposition of such other sanctions as the Court deems appropriate.

///

///

///

1       B.      <u>Use of Depositions</u>.  The parties are ordered to file with the Court and
2 exchange between themselves by **February 3, 2015** a statement designating portions of
3 depositions intended to be offered or read into evidence (except for portions to be used
4 only for impeachment or rebuttal).
5       C.      <u>Interrogatories</u>.  The parties are ordered to file with the Court and
6 exchange between themselves by **February 3, 2015** the portions of Answers to
7 Interrogatories which the respective parties intend to offer or read into evidence at the
8 trial (except portions to be used only for impeachment or rebuttal).
9 VIII.   <u>FURTHER DISCOVERY OR MOTIONS</u>
10      Pursuant to the Court's Pretrial Scheduling Order, all discovery and law and
11 motion was to have been conducted so as to be completed as of the date of the Final
12 Pretrial Conference.  That Order is confirmed.  The parties are free to engage in informal
13 agreements regarding discovery and law and motion matters.  However, any such
14 agreements will not be enforceable in this Court.
15 IX.     <u>AUDIO/VISUAL EQUIPMENT</u>
16      The parties are required to file electronically a joint request to the Courtroom
17 Deputy Clerk, Stephanie Deutsch, by **January 27, 2015** if they wish to reserve and
18 arrange for orientation with all parties on the Court's mobile audio/visual equipment for
19 presentation of evidence.  There will be one date and time for such orientation.
20 X.      <u>DATE AND LENGTH OF TRIAL</u>
21      At the Final Pretrial Conference, the court set the trial for December 15, 2014.  On
22 the court's own motion, the December 15, 2014 bench trial is vacated and continued to
23 **February 17, 2015 at 9:00 a.m.**  The estimated length of trial is **two (2) days.**  Counsel
24 shall call Stephanie Deutsch, Courtroom Deputy, at (916) 930-4207, by **February 3,**
25 **2015** to ascertain the status of the trial date. The Court will permit each side up to one
26 (1) hour for closing arguments.
27 ///
28 ///

XI. OBJECTIONS TO PRETRIAL ORDER

Each party is granted five (5) court days from the date of this Final Pretrial Order to object to any part of the order or to request augmentation to it. A Final Pretrial Order will be modified only upon a showing of manifest injustice. If no objection or modifications are made, this Order will become final without further order of the Court and shall control the subsequent course of the action, pursuant to Rule 16(e) of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Dated: September 12, 2014

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT